**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BARBARA L. NEAL,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:09-CV-522-N (BH)** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order No. 3-251*, this case was automatically referred to the undersigned

United States Magistrate Judge for proposed findings of fact and recommendation for disposition.

Before the Court are *Plaintiff's Motion for Summary Judgment and Brief in Support* ("Pl. Br."), filed

June 10, 2009, and *Defendant's Motion for Summary Judgment and Brief in Support* ("Def. Br."),

filed August 7, 2009.   Based on the evidence, relevant filings, and applicable law, the Court

recommends that *Plaintiff's Motion for Summary Judgment* should be **GRANTED,** *Defendant's*

*Motion for Summary Judgment* should be **DENIED**, and the case should be remanded to the

Commissioner for further proceedings.

**I. BACKGROUND**[2]

**A.**   **Procedural History**

Barbara L. Neal ("Plaintiff") seeks judicial review of a final decision by the Commissioner

---

[2] The following background comes from the transcript of the administrative proceedings, which is
designated as "Tr."

- 1 -

of Social Security ("Commissioner") denying her claim for disability benefits under Title II of the

Social Security Act.  On January 18, 2006, Plaintiff filed an application for disability insurance

benefits ("DIB").  (Tr. at 12, 90-92).  Plaintiff claimed she had been disabled since March 1, 1999,

due to a heart condition, diabetes, high blood pressure, and neuropathy in her feet and legs.  (Tr. at

90, 116).  Her application was denied initially and upon reconsideration.  (Tr. at 48-52, 56-58).

Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 12, 61).

She personally appeared and testified at a hearing held on June 17, 2008.  (Tr. at 22).  On September

22, 2008, the ALJ issued his decision finding Plaintiff not disabled.  (Tr. at 12-19).  The Appeals

Council denied Plaintiff's request for review, concluding that the contentions raised in her request

for review did not provide a basis for changing the ALJ's decision, and the ALJ's decision became

the final decision of the Commissioner.  (Tr. at 1-4).  Plaintiff timely appealed the Commissioner's

decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on March 19, 2009.

**B.**     **Factual History**

        **1.**     **Age, Education, and Work Experience**

        Plaintiff was born in 1949 and was 59  years old at the time of the hearing.  (Tr. at 22, 90).

She is a high school graduate.  (Tr. at 19).  Her past relevant work experience includes work as a

home health aide.  (Tr. at 18).  Plaintiff last worked in 2004. (Tr. at 23).

        **2.**     **Medical Evidence**

        The parties do not dispute that Plaintiff suffers from a degenerative disease of the lumbar

spine, coronary artery disease, peripheral vascular disease, diabetes melitus with neuropathy, and

peripheral neuropathy.  (Pl. Br. at 2-3; Def. Br. at 2).  The only disputed medical evidence relevant

to this action concerns Plaintiff's obesity.  Therefore, only the rather brief records relevant to

Plaintiff's obesity are summarized here.

On April 9, 1998, Dr. Calixto A. Romero Jr., M.D., noted that Plaintiff was morbidly obese and weighed 243 lbs. (Tr. at 172). In July and October of that year, he again described Plaintiff as morbidly obese but reported a slight weight loss and some progress with regard to her weight. (Tr. at 174, 176). On January 29, 1999, Dr. Romero noted Plaintiff's morbid obesity, but this time reported that she was gaining weight. (Tr. at 177). In a letter to Plaintiff, dated February 14, 1999, Dr. Romero wrote that she "must" exercise and lose weight. (Tr. at 178). On April 7, 1999, he noted his disappointment with Plaintiff's dietary noncompliance. (Tr. at 179-80). On February 14, 2007, in a consultation report concerning Plaintiff, Dr. Jeffrey M. Schussler, M.D., stated that Plaintiff was obese and had gained weight instead of losing it. (Tr. at 276-77).

### 3.     Hearing Testimony

A hearing was held before the ALJ on June 17, 2008. (Tr. at 22). Plaintiff appeared personally and was represented by an attorney. *Id.*

#### a.  *Plaintiff's Testimony*

Plaintiff testified that she was a high school graduate and had been married for 25 years. (Tr. at 19, 31). Plaintiff testified that she had worked as a "sitter"for a neighbor in her seventies, and that the work lasted about 6 months. (Tr. at 28-29). As part of her job, she walked next-door to the neighbor's house in the mornings, and after making sure that the neighbor took her medication and insulin, she simply accompanied her the rest of the day. (Tr. at 29). She testified that her job did not require her to lift or carry her neighbor, cook, or clean. (Tr. at 27-28). On some days, she had to miss work and go home early. (Tr. at 31).

Plaintiff testified that, in May 2004, her work as a sitter ended because of the neighbor's untimely demise. (Tr. at 24-25). At the time, she was living with her husband and 19-year old

- 3 -

daughter.  *Id.*  Plaintiff testified that after quitting work, she stayed home while her husband and daughter worked.  *Id.*  Because her legs and feet would swell up, and she would find herself short of breath, Plaintiff did not do any housework and relied on her daughter to do it for her.  (Tr. at 25-26).  She did, however, make her bed and create potholders by crisscrossing little strings.  (Tr. at 26).  After a fall at the grocery store due to numb legs, Plaintiff stopped going to the grocery store unaccompanied.  (Tr. at 27).  Plaintiff stated that she did not take care of her grandson because she was unable to keep up with him.  (Tr. at 32).

Plaintiff testified that she had been diabetic for 12 years and had been using insulin for 8 out of those 12 years.  (Tr. at 32-33).  She had severe neuropathy in both legs and had experienced a slower than normal pace from 2003 to the time of the hearing.  (Tr. at 33).  During that time, she had used a cane to help her walk, but even the cane allowed her to walk only a block at the most.  (Tr. at 33-34).  She used the cane around the house and an electric cart around the grocery store.  (Tr. at 34).  She could only stand for a few seconds without holding onto something, and had fallen a few times since her fall at the grocery store.  (Tr. at 34-35).  Plaintiff testified that if she sat with her feet on the floor, without elevating them every twenty minutes or so, she experienced swelling, burning, and numbness.  *Id.*  She spent 3 to 4 hours a day with her feet elevated.  (Tr. at 35).  Plaintiff further testified that she suffered from severe back pain due to a bulging disc pressing on her nerve roots.  (Tr. at 35-36).  She also suffered from a stint in her heart and had experienced congestive heart failure.  (Tr. at 37).

### b. Vocational Expert's Testimony

The ALJ questioned a vocational expert ("VE") at Plaintiff's hearing.  The ALJ asked the VE to assume a hypothetical person with the following residual functional capacity ("RFC"): lift 50 pounds occasionally and 25 pounds frequently; stand, sit and walk for up to six hours in an eight-

- 4 -

hour work day; unable to climb ladders, ropes or scaffolds; perform no work at unprotected heights or around hazardous machinery; perform in a clean working environment, free from odors, dust, gases or poor ventilation; perform in an environment that is not excessively hot or cold. (Tr. at 38). The VE testified that such a person could perform Plaintiff's past relevant work as a home health aide (medium, semi-skilled, specific vocational preparation ("SVP") of 7). *Id.*

The VE classified the work described in Plaintiff's testimony as a companion (light, semi-skilled, SVP 3). (Tr. at 39). She also testified that someone who missed at least 2 days of work per month would not be able to maintain employment as a home health aide or a companion. (Tr. at 39-40). She further testified that someone who was unable to be on her feet at least 6 hours out of an 8-hour work day would be precluded from performing all light work. (Tr. at 40-41). A person needing to elevate her feet throughout the work-day would also be precluded from performing all light work. (Tr. at 41). A person would be precluded from doing all light and medium work if she could not focus because of debilitating pain, had to take naps because of medication side effects, or had to use an ambulatory device. *Id.*

## C.   ALJ's Findings

The ALJ denied Plaintiff's application for benefits by written opinion issued on September 22, 2008. (Tr. at 12-19). The ALJ found that Plaintiff met the insured status requirements through September 30, 2004, and had not engaged in substantial gainful activity since the alleged onset of disability, May 9, 2004. (Tr. at 14, ¶¶1, 2). In addition, he found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, coronary artery disease, peripheral vascular disease, diabetes mellitus with neuropathy, and peripheral neuropathy. (*Id.*, ¶3). However, the ALJ concluded that Plaintiff's impairments did not meet or equal a listed impairment through the date last insured. (Tr. at 15, ¶4).

- 5 -

The ALJ found that Plaintiff had the RFC to perform medium work with normal breaks in a clean environment with no exposure to excess heat or cold and no vibrations, but was precluded from climbing and working at unprotected heights.  (*Id.*, ¶5).  In making this finding, the ALJ acknowledged Plaintiff's obesity but noted that medical records from a physical exam conducted on April 9, 1998, had emphasized weight loss.  (Tr. at 15).  The ALJ stated that he had considered the impact of Plaintiff's obesity on her functioning in compliance with SSR 02-1p.  *Id.*  He acknowledged that Plaintiff's obesity "in some measure, exacerbated her symptoms of degenerative disc disease" but concluded that it, "in combination with her other impairments, would not preclude sustained work activity with the limitations noted in [her RFC]."  *Id.*

The ALJ also  found that Plaintiff, with her RFC, could perform her past relevant work as a home health aide.  (Tr. at 18, ¶6).  Based on these findings the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date through the date last insured.  (Tr. at  19).

## II.  ANALYSIS

### A.   <u>Legal Standards</u>

#### 1.    **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3).  Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does not

reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.      An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.      An individual who does not have a "severe impairment" will not be found to be disabled.

3.      An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.      If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.      If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability.

*Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.      Issues for Review**

Plaintiff presents the following issues for review:

(1)      The ALJ relied on an improper legal standard of severity at step-two of the

- 8 -

sequential evaluation; and

(2)     The ALJ erred in evaluating the severity of Plaintiff's obesity when evaluating the combination of impairments.

(Pl. Br. at 1).

## C.     <u>Issue One: Improper Legal Standard</u>

The first issue Plaintiff presents for review is whether the ALJ relied on an improper legal standard for severity at step two of the sequential evaluation.  (Pl. Br. at 4-5).  Defendant contends that an ALJ is presumed to have applied the correct standard of severity if he cites to *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  (D. Br. at 4).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than indicated by the statute.  *Stone*, 752 F.2d at 1104-05. Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work."  *Id.* at 1101.  Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity."  *Id.* at 1104.

To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used."  *Id.* at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393

- 9 -

(5th Cir. 2000); *Eisenbach v. Apfel*, 2001 WL 1041806, at \*6 (N.D. Tex. Aug. 29, 2001).

Notwithstanding this presumption, the Court must look beyond the use of "magic words" and

determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d

1308, 1311 (5th Cir. 1986).  Unless the correct standard of severity is used, the claim must be

remanded to the Secretary for reconsideration. *Stone*, 752 F.2d at 1106.

 In this case, the ALJ explicitly cited to *Stone* in making its severity finding at step 2 of the

disability determination process.  (Tr. at 14).  The brief narrative discussion accompanying the

severity finding , however, shows that he did not properly apply the standard articulated in *Stone*.

First, the ALJ stated that "a medically determinable impairment or combination of impairments is

severe if it significantly limits an individual's physical or mental ability to do basic work activities."

*Id.*  This is the standard set forth in 20 C.F.R. § 404.1520(c), but one that *Stone* found to be

inconsistent with the Social Security Act.  *See* 752 F.2d at 1104-05.  Second, the ALJ cited to SSR

96-3p, which states that an impairment is not severe if it is "a slight abnormality...that has no more

than a minimal effect on the ability to do basic work activities."  (Tr. at 14); SSR 96-3p, 1996 WL

374181, \*1 (S.S.A., July 2, 1996).  Under *Stone*, however, an impairment is not severe "only if it

is a slight abnormality having such minimal effect on the individual that it would not be expected

to interfere with the individual's ability to work."  752 F.2d at 1101.  Unlike the standard set forth

in SSR 96-3p, *Stone* provides no allowance for a minimal interference with claimant's ability to

work.

 Although the ALJ referenced *Stone* in his decision, he merely used "magic words."

*Hampton*, 785 F.2d at 1311.  The Court must look beyond the "magic words" and determine whether

the ALJ applied the Fifth Circuit's construction of a severe impairment.  *Id.*  It is clear that the ALJ's

application of the regulations did not expressly state the *Stone* standard or another opinion of the

same effect.  Nor did the ALJ make any express statement indicating use of the *Stone* definition of severity.  The ALJ therefore failed to analyze Plaintiff's medically determinable impairments at step 2 in accordance with the standard articulated by the Fifth Circuit.  *Stone*, 752 F.2d at 1106.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)).  However, the ALJ's failure to apply the *Stone* standard was a legal error, not a procedural error.  The Fifth Circuit left the lower courts no discretion to determine whether such an error was harmless.  Rather, the court mandated that "[u]nless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106 (emphasis added).  Because remand is required for an error at step 2, the Court does not consider Plaintiff's second issue for review.

### III.   RECOMMENDATION

*Plaintiff's Motion for Summary Judgment* should be **GRANTED**, *Defendant's Motion for Summary Judgment* should be **DENIED**, and the decision of the Commissioner should be **REVERSED** and the case be **REMANDED** for reconsideration..

**SO RECOMMENDED**, on this 11th day of September, 2009.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

- 12 -